UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ERICA MORENO and
KATTI PUTNAM,

Case No. 2:14-cv-13829

      Plaintiffs,

v

RON HUGHES,

      Defendant.

---

## PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION *IN LIMINE*

Plaintiffs, by their undersigned counsel of record, submit this Brief In Opposition To Defendant's September 8, 2015, Motion *In Limine*. Contrary to Defendant's counsel's representation to this Court, Defendant never Plaintiff explained the nature of this Motion or its legal basis. Furthermore, Defendant's counsel never requested concurrence in this Motion. If he had, Plaintiffs' counsel would have disclosed the binding and controlling authority that precludes the relief sought.

**TABLE OF CONTENTS**

**STATEMENT OF ISSUES PRESENTED**
……………………………………………………………………………..ii

**CONTROLLING AUTHORITY**...……………………………………….iii

**INTRODUCTION**
.....................……………………………………………………...1

**FACTS**
………………………………………….…………………………..3

**LAW**
………………………………………………………………... 5

**ARGUMENT**
………………………………………………………………….7

**I.      THE COURT SHOULD DENY THE MOTION BECAUSE CONTROLLING AUTHORITY REQUIRES THAT THIS COURT PERMIT THE JURY TO DETERMINE DAMAGES BASED ON THE NATURE OF THE CONSTITUTIONAL DEPRIVATION, THE MAGNITUDE OF THE MENTAL DISTRESS AND HUMILIATION SUFFERED BY THE PLAINTIFF, AND ANY OTHER INJURY CAUSED AS A RESULT OF BEING DEPRIVED OF FEDERALLY PROTECTED RIGHTS**………………………………………..12

**CONCLUSION**………………………………………...…………….14

.

## STATEMENT OF ISSUES PRESENTED

Whether Plaintiffs in the 28 U.S.C. § 1983 constitutional tort case alleging that Defendant violated Plaintiffs' Fourth Amendment rights when Defendant shot Plaintiffs' dog can only recover damages in the amount of the value of their dog because Michigan civil damages law only permits such recovery?

Defendant answers "Yes"

Plaintiffs answer "No"

## CONTROLLING AUTHORITY

**Cases**

*Carey v. Piphus*, 435 U.S. 247, 265, 55 L. Ed. 2d 252, 98 S. Ct. 1042 (1978)

*Smith v. Heath*, 691 F.2d 220, 226-227 (6th Cir. Tenn. 1982)

*Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 238-240 (U.S. 1969)

**INTRODUCTION**

The Court should deny the Motion because in § 1983 cases such as this one, with respect to compensatory damages:

> although the amount of damages for the deprivation of an intangible constitutional right cannot be determined by reference to an objective standard, such as pecuniary loss, non-punitive damages may be awarded. These damages may be special and the trial court should consider the following factors in making its award: the nature of the constitutional deprivation, the magnitude of the mental distress and humiliation suffered by the plaintiff, and any other injury caused as a result of being deprived of federally protected rights.

*Smith v. Heath*, 691 F.2d 220, 226-227 (6th Cir. Tenn. 1982) (affirming award of compensatory damages of $5,000 for the unconstitutional search and seizure, punitive damages of $5,000, $450 for lost property and an award of attorneys' fees in the amount of $16,574.95). The *Smith* court also affirmed an award of punitive damages holding that "The same factors discussed above are relevant in the determination of the punitive damages . . . [defendant's] actions were in fact willful thus justifying the awards of punitive damages." *Id.* at 228. Finally, the Court affirmed an award of attorneys' fees. *Id.* at 228 (awarding plaintiff's hourly fees).

As much as Defendant would like to re-cast this case as a property damage case, it is not. This is a Fourth Amendment case and the rights invoked in this Court are greater than Plaintiffs' property rights in their dog

that Defendant shot while raiding the wrong house.  Plaintiffs ask this Court to redress Defendant's violation of Plaintiffs' Fourth Amendment rights, for which 28 U.S.C. § 1983 provides them a private right of action. Accordingly, Plaintiffs invoke their federal Constitutional right and not merely state law property rights.  Therefore, federal common law damages and punitive damages apply to this case.  *Basista v. Weir*, 340 F.2d 74, 87 (3d Cir. Pa. 1965) ("the federal common law of damages commands the issue of damages in the case at bar. We are also of the view that the federal law permits the recovery of exemplary or punitive damages).  Furthermore, applying Michigan state property damage law to this constitutional tort case does not advance the interests that the Civil Rights Act was enacted to protect.  *Carey v. Piphus*, 435 U.S. 247, 254, 55 L. Ed. 2d 252, 98 S. Ct. 1042 (1978) (The basic purpose of a section 1983 damages award is to compensate persons for injuries caused by the deprivation of their constitutional rights).  Finally, the Supremacy Clause (art. VI, cl. 2) of the United States Constitution precludes limiting Plaintiffs damages in this case because the Civil Rights Act provides for compensatory, punitive damages and attorneys' fees.  *Smith, supra*; 28 U.S.C. § 1988(b).  Indeed, an award of even nominal damages is sufficient to show that it found constitutional violation and thus to warrant, in the jury's discretion, an award of punitive

2

damages under the doctrine of *Carey v. Piphus*, 435 U.S. 247, 98 S. Ct. 1642, 55 L. Ed. 2d 252 (1978). *Gumsey v. Crawford*, 679 F.2d 666 (6th Cir. Ohio 1982). Thus, Defendant's Motion is based on demonstrably false legal premises. Accordingly, the Court should deny the Motion.

## FACTS

On June 18, 2014, Plaintiffs owned 58-pound female dog named "Clohe." Complaint at ¶ 9. On that date, Clohe was approximately fifteen years old. *Id*. at ¶ 10. Plaintiffs and Clohe resided at 1034 Alvord, Flint, Michigan 48507. *Id*. at ¶ 11.

On June 18, 2014, Defendant along with several Michigan State Troopers and a City of Flint police officer arrived at Plaintiffs residence to execute a warrant for a fugitive named Matthew Mitchell. *Id*. at ¶ 14. Mr. Mitchell did not and never did reside or occupy Plaintiffs' residence. *Id*. at ¶ 15. Instead, Plaintiffs subsequently learned that Mitchell lived at 1020 Alvord, which was located next door to Plaintiffs residence. *Id*. at ¶ 16.

Meanwhile, Defendant Hughes entered into Plaintiffs' back yard without a search warrant authorizing such entry. *Id*. at ¶ 17. At that time, Plaintiffs' door to the back yard was open. *Id*. at ¶ 18. At that time, Clohe went into her back yard through the open back door of the house. *Id*. at ¶ 19.

Plaintiffs' next-door neighbor, Jimmy Armstrong, witnessed Defendant Hughes shoot Clohe in the face as she walked down the stairs to go into Plaintiffs' back yard. *Id*. at ¶ 20. Mr. Armstrong has signed an affidavit stating that Clohe was not attacking or threatening any officer at any time. *Id*. at ¶ 21. Mr. Armstrong's Affidavit further states that Defendant Hughes "shot Clohe for no reason at all." *Id*. at ¶ 22. Both Plaintiffs heard the gunshots and ran to Clohe's aid. *Id*. at ¶ 23. Clohe sustained one gun shot wound to the muzzle and was bleeding from the wound. *Id*. at ¶ 24. Plaintiffs and Armstrong heard officers state that they had gone to the wrong house to search for the fugitive. *Id*. at ¶ 25. Next, officers shouted to Plaintiffs to take Clohe to the veterinary hospital. *Id*. at ¶ 26. State Trooper Cavanaugh said to Plaintiffs that, "We'll take care of this." *Id*. at ¶ 27. Next Plaintiffs drove Clohe to the veterinary hospital. *Id*. at ¶ 28. Another Michigan State Trooper (who was not involved with the incident that culminated in shooting Clohe) pulled Plaintiffs over for speeding. *Id*. at ¶ 28. That State Trooper then escorted Plaintiffs to the veterinary hospital. *Id*. at ¶ 29.

Clohe lost a portion of her tongue, a canine tooth and endured three surgeries to repair damage suffered from the gun shot injuries that Hughes inflicted on her. *Id*. at ¶ 30. Veterinary Medical Hospital, P.C., 3252 Miller

Road, Flint, Michigan 48507, removed a bullet and bullet fragments from Clohe. *Id*. at ¶ 31. Mr. Armstrong and other neighbors witnessed Defendant and several Michigan State Troopers remain on Plaintiffs' property for about an hour after Plaintiffs took Clohe to the veterinary hospital, during which time they searched Plaintiffs' back yard for shell casings and took photographs. *Id*. at ¶ 32. Following the shooting incident, Plaintiffs placed several phone calls to Michigan State Trooper Cavanaugh and Michigan State Trooper Durand about the incident. *Id*. at ¶ 33. No Michigan State Trooper or representative ever returned Plaintiffs' calls. *Id*. at ¶ 34.

In sum, Defendant went to the wrong house to execute an arrest warrant and shot Plaintiffs' dog without any reasonable basis for doing so. Police officers recognized and acknowledge their mistake and told Plaintiffs that they would "take care of this." Defendant did not "take care of this." No citation of any sort was filed against any Plaintiff.

## LAW

A primary legal issue in this case is whether Defendants' shooting of Lexie was an unreasonable seizure. *San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3D 962, 977-78 (2005) ("the Fourth Amendment forbids the killing of a person's dog, or the destruction

of a person's property, when that destruction is unnecessary--*i.e.*, when less intrusive, or less destructive, alternatives exist").

The Fourth Amendment of the Constitution of the United States provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

42 U.S.C. Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, customer usage, of any state ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution of laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The three essential elements of a § 1983 Fourth Amendment cause of action are: (1) an act under color of law (2) which constitutes a seizure (3) which is objectively unreasonable. See *Brower v. County of Inyo*, 489 U.S. 593, 599, 103 L. Ed. 2d 628, 637, 109 S. Ct. 1378 (1989) (holding that an unreasonable Fourth Amendment seizure is sufficient to establish § 1983 liability).

**ARGUMENT**

The United States is unique in the world because our laws provide powerful and effective remedies against police misconduct. In particular, the Federal Civil Rights Act, 42 U.S.C. § 1983, was enacted after the Civil War to provide citizens with a remedy for unlawful police conduct.[1] The determination of the amount of damages in such cases to be awarded is left to the discretion and good judgment of the fact finder as guided by the facts of the particular case. *Tullos v. Corley*, 337 F.2d 884 (6th Cir. 1964). This concept has been specifically applied in section 1983 cases for both punitive and compensatory damages. The court in *Smith v. Heath*, 691 F.2d 220, 226 (6th Cir. Tenn. 1982) said it concisely:

> As with compensatory damages, the award of punitive damages is within the discretion of the trial court. The allowance of such damages inherently involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of fact. *Stolberg v. Members of the Board of Trustees for the State Colleges of Connecticut*, 474 F.2d 485, 489 (2d Cir. 1973) (quoting *Lee v. Southern Home Sites Corp.*, 429 F.2d 290, 294 (5th Cir. 1970). See also, *Basista v. Weir*, 340 F.2d 74 (3d Cir. 1965); *Zarcone v. Perry*, 572 F.2d 52 (2d Cir. 1978) ("general principles of damages apply to a civil rights action").

---

[1] See Speech 1 of Representative Butler, Congressional Globe, 42nd Congress, 1st Session 807 (1871), quoted in *Crumpton v. Gates*, 947 F.2d 1418, 1421 (9th Cir. 1991).

7

In particular, with respect to compensatory damages, the *Smith* Court

held that:

> ***The basic purpose of a section 1983 damages award is to compensate persons for injuries caused by the deprivation of their constitutional rights.*** *Carey v. Piphus*, 435 U.S. 247, 254, 55 L. Ed. 2d 252, 98 S. Ct. 1042 (1978) and the cases cited therein. In guiding lower courts as to which injuries are compensable, the *Carey* court at 264 states that ***emotional distress caused by a deprivation is compensable under section 1983***.

> The Seventh Circuit in *Hostrop v. Bd. of Jr. College Dist. No. 515*, 523 F.2d 569, 579-80 (7th Cir. 1975), cert. denied, 425 U.S. 963, 96 S. Ct. 1748, 48 L. Ed. 2d 208 (1976), held that, ***although the amount of damages for the deprivation of an intangible constitutional right cannot be determined by reference to an objective standard, such as pecuniary loss, non-punitive damages may be awarded. These damages may be special and the trial court should consider the following factors in making its award: the nature of the constitutional deprivation, the magnitude of the mental distress and humiliation suffered by the plaintiff, and any other injury caused as a result of being deprived of federally protected rights***.

> In *Konczak v. Tyrrell*, 603 F.2d 13 (7th Cir. 1979), cert. denied, 444 U.S. 1016, 62 L. Ed. 2d 646, 100 S. Ct. 668 (1980), a case factually similar to the one presently before the court, the Seventh Circuit upheld awards of $12,500 in compensatory damages to a husband and wife, although they proved only $576 in lost wages. In that section 1983 action, the husband had been unlawfully arrested, the wife unlawfully detained, and their dwelling unlawfully searched with evidence unlawfully seized. The court rejected the argument that there was no proof of actual damages and pointed to "less quantifiable damages in the form of mental distress, humiliation, loss of reputation, and other general pain and suffering resulting from the arrest, detention, search and seizure, imprisonment, confinement to a

mental institution, and prosecution of three criminal complaints." *Id*. at 17.

The importance of taking into account these tangible factors is seen in another section 1983 case, *Baskin v. Parker*, 602 F.2d 1205 (5th Cir. 1979). In *Baskin*, the court reversed the district court's damage award and, on remand, required that the district court award damages for humiliation and emotional distress.

In *Vetters v. Berry*, 575 F.2d 90 (6th Cir. 1978), this court upheld a jury award of $1,040 in compensatory damages and two awards of punitive damages for $25,000 and $10,000 in a section 1983 action. Plaintiff Vetters had been peacefully assembled, then was ordered to go home, assaulted and beaten, unlawfully searched, arrested and held in custody, and later unlawfully charged. In determining whether the awards were excessive, this court quoted Judge Robert Taylor in *Gaston v. Gibson*, 328 F. Supp. 3 (E.D. Tenn. 1969). Gaston was a Civil Rights Act claim involving injuries inflicted on a 17-year-old college student during the course of an alleged arrest. Plaintiff Gaston's medical bills were $736.60. In sustaining awards of $10,000 compensatory damages and $30,000 punitive damages, Judge Taylor stated:

> "Each defendant's main contention is that the verdict of $10,000.00 compensatory and $30,000.00 punitive damages is excessive and shows prejudice by the jury. There are several civil rights cases where verdicts were less than a total of $10,000.00. However, in suits where punitive damages are proper, there have been larger verdicts. In *Butts v. Curtis Publishing Company*, 225 F. Supp. 916 (N.D. Ga. 1964), a verdict of $400,000.00 punitive was held proper in a libel and slander case. In *Bucher v. Krause*, 200 F.2d 576, 587 (C.A.7, 1953), $100,000.00 was held proper when a gunshot wound caused serious and permanent damage to plaintiff's buttocks. In *Reynolds v. Pegler*, 223 F.2d 429 (C.A.2, 1955) $1.00 compensatory damages and $175,000.00 punitive damages in a libel and slander case were

9

> approved. In addition to obvious common law torts
> defendants committed, the entire procedure for
> handling juvenile offenders in Tennessee was
> disregarded. T.C.A. §§ 37-250, 37-251, 37-252.
> Even procedural rights given adult offenders were
> not observed. T.C.A. § 40-806. The conduct of
> defendants showed disregard for procedural
> safeguards which our Anglo-American system has
> established. This court is reluctant to invade the
> particular province of the jury in evaluating the
> value of civil rights. *Collum v. Butler*, 288 F. Supp.
> 918 (N.D. Ill. 1968). [23] The shocking conduct
> shown rebuts any inference of prejudice and
> passion in the jury's verdict.

> No formula exists to determine with precision compensatory
> damages. The amount is left to the sound discretion of the fact
> finder. Considering the evidence in the present case in the light
> most favorable to the plaintiffs, the awards of compensatory
> damages were well within the proofs.

*Smith v. Heath*, 691 F.2d 220, 226-227 (6th Cir. Tenn. 1982) (affirming

award of compensatory damages of $5,000 for the unconstitutional search

and seizure, punitive damages of $5,000, $450 for lost property and an

award of attorneys' fees in the amount of $16,574.95). The *Smith* Court also

noted that punitive damages are also permitted in § 1983 claims: "punitive

damages have been held to be allowed on the basis of punishment of the

wrongdoer, ***not so much on the nature and extent of the injury as on the***

***'oppression of the party who does the injury***. *Smith*, 691 F.2d at 227-228.

The Court went on to affirm the award of punitive damages, holding

that, "The same factors discussed above are relevant in the determination of

the punitive damages. Upon review, the facts herein recited support the fact finder's conclusion and considered judgment that Rohtert's actions were in fact willful thus justifying the awards of punitive damages." *Smith*, 691 F.2d at 228.

Finally, the Court affirmed the award of attorneys' fees:

By the language of 42 U.S.C. § 1988, Congress provided that an award of attorney fees to prevailing parties in actions brought pursuant to section 1983 is within the sound discretion of the district court. However, the court's discretion is narrow. The prevailing party should "ordinarily recover an attorney's fees unless special circumstances would render such an award unjust." *Northcross v. Board of Ed. of Memphis City Schools*, 611 F.2d 624, 633 (6th Cir. 1979), cert. denied, 447 U.S. 911, 64 L. Ed. 2d 862, 100 S. Ct. 2999 (1980), citing the Senate Report No. 94-1011, reprinted in 1976 U.S. Code Cong. & Admin. News, p 5908. See, *Dawson v. Pastrick*, 600 F.2d 70, 79 (7th Cir. 1979) ("a prevailing plaintiff should receive fees almost as a matter of course."). *Cf., Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 19 L. Ed. 2d 1263, 88 S. Ct. 964 (1968).

Smith and M. E. Smith have prevailed in this action and are thus entitled to an award of attorney fees. No special circumstances exist in this case which would make the award of attorney fees unjust.

In *Northcross* at 642, to determine the amount of the award, "We conclude[d] that an analytical approach, grounded in the number of hours expended on the case, will take into account all the relevant factors, and will lead to a reasonable result." Here, the district judge, in a three-page detailed memorandum, set forth how the award was computed. He began by reviewing some of the practical and legal problems faced by the attorneys in preparing this case. He noted such things as the unpopularity of suits against police officers, the difficulty in getting facts and

evidence, the necessity for the number of firms involved, and the computation of the time involved. He then used the number of hours and the attorneys' normal billing rates as a basis to compute the award.

*Smith*, 691 F.2d at 228.

I.    **THE COURT SHOULD DENY THE MOTION BECAUSE CONTROLLING AUTHORITY REQUIRES THAT THIS COURT PERMIT THE JURY TO DETERMINE DAMAGES BASED ON THE NATURE OF THE CONSTITUTIONAL DEPRIVATION, THE MAGNITUDE OF THE MENTAL DISTRESS AND HUMILIATION SUFFERED BY THE PLAINTIFF, AND ANY OTHER INJURY CAUSED AS A RESULT OF BEING DEPRIVED OF FEDERALLY PROTECTED RIGHTS**

As demonstrated above, compensatory damages in § 1983 cases are awarded based upon the deprivation of an intangible constitutional right, although it cannot be determined by reference to an objective standard, such as pecuniary loss. ***"These damages may be special and the trier of fact should consider the following factors in making its award: the nature of the constitutional deprivation, the magnitude of the mental distress and humiliation suffered by the plaintiff, and any other injury caused as a result of being deprived of federally protected rights***." *Smith*, 691 F.2d at 226-227.

The Court should reject Defendant's unsupported argument that 28 U.S.C. § 1988 requires that this Court is bound to follow state law and limit damages based on Michigan law precluding recovery of emotional distress

or mental anguish damages.  The Supreme Court of the United States of America has held construed 28 U.S.C. § 1988 to mean "*that both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes . . . . The rule of damages, whether drawn from federal or state sources, is a federal rule responsive to the need whenever a federal right is impaired*." *Sullivan v. Little Hunting Park, Inc*., 396 U.S. 229, 238-240 (U.S. 1969).

Moreover, contrary to Defendant's claim, emotional distress damages are recoverable in § 1983 cases.  *Carey v. Piphus*, 435 U.S. 247, 265, 55 L. Ed. 2d 252, 98 S. Ct. 1042 (1978) (holding that emotional distress caused by a constitutional deprivation is compensable under section 1983); *Westerfield v. United States*, 483 Fed. Appx. 950, 955-956 (6th Cir. Ohio 2012) (The fact that plaintiff has not suffered wrongful imprisonment does not necessarily preclude a showing that defendants' suppression of Brady material resulted in a denial of plaintiff's constitutional right to a fair trial compensable in damages under 42 U.S.C. § 1983 for such injury as he is able to prove—e.g., impairment of reputation, personal humiliation, mental anguish and emotional distress, and including potentially punitive damages); *Baumgardner v. Secretary, United States Dep't of Hous. & Urban Dev*., 960

F.2d 572 (6th Cir. 1992) (affirming award of emotional distress damages in civil rights act case).

CONCLUSION

Therefore, Plaintiffs requests that the Court deny the Motion.

Respectfully submitted,

OLSON PLLC


s/Christopher S. Olson_____
Christopher S. Olson (P58780)
32121 Woodward Avenue
Suite 300
Royal Oak, Michigan 48073
(248) 672-7368
(248) 415-6263 Facsimile
colson@olsonpllc.mygbiz.com
*Attorney for Plaintiff*

Dated: September 22, 2015
          Detroit, Michigan

**CERTIFICATE OF SERVICE**

On September 22, 2015, I served the attached Brief In Opposition To Defendant's Motion *In Limine* via the Court's ECF system.

Respectfully submitted,

OLSON PLLC

s/Christopher S. Olson_____
Christopher S. Olson (P58780)
32121 Woodward Avenue
Suite 300
Royal Oak, Michigan 48073
(248) 672-7368
(248) 415-6263 Facsimile
colson@olsonpllc.mygbiz.com
*Attorney for Plaintiffs*

Dated: September 22, 2015
        Detroit, Michigan